Good morning, your honors. May it please the court, my name is Jack Sholkoff and I represent the defendant TravelCenters of America. I would like to reserve about three minutes of my time for rebuttal. The district court made two mistakes in deciding to remand this action to state court. The first was its decision that the notice of removal was not timely. It was, in fact, timely. And most importantly with regard to the timeliness issue, the district court got the law wrong. The district court did not properly analyze the issue. Specifically, instead of focusing on the face of the original complaint, it made findings related to the judicial revival doctrine, which was not argued by either party in the district court and has no applicability here. Ignoring the Harris doctrine, the district court made no findings as to whether the original complaint was removable on its face. And even if it had, if its decision can be interpreted to having made that decision, it got it wrong. And that's because the original complaint was vague and contradictory. It used terms interchangeably such as salaried store employee or salaried station employee. And as a result, did not clearly articulate the nature of the class. And specifically, whether- I see nitpicking there. Don't those terms really mean all salaried employees? Isn't that the gist? No, I don't think it's the gist. And it certainly wasn't the gist of the meaning to Travel Centers of America. Travel Centers of America does not operate stations. It operates stores, restaurants, a shop, fast food restaurants at a retail location. Clearly, if Travel Centers had interpreted it to mean station, it could have done the math and it would have been more than 100 people and it would have removed the case. But it didn't know. It was vague. And it did not want to prematurely remove the case until it knew for sure that there were 100 people in the putative class. Could you file the motion for a more definite statement? No. What we did was we served interrogatories on the other side and sought to get clarity on specifically on the meaning of station and who the salaried station employees were. Remember, the named plaintiff at that time, Mr. Knoll, worked in one of these locations. He knew very well that there were other managers working there. We asked specifically, give us the names of at least somebody who is a salaried station employee. And the response was, we don't know. He didn't even name himself as a salaried station employee. So after the interrogatories, what happened next was that the plaintiffs submitted interrogatories to us and document requests to us using that phrase. We objected to it, said we don't know what it means. Can you please tell us what it means? And plaintiff's counsel in April of 2009 specifically said that salaried station employees, and this is at page 350 of the record, the letter, says that we'll agree to substitute, I'm quoting now, profit center manager store as long as the term profit center manager store refers to employees who worked the salaried manager position at defendant's store locations across California. Remember, again, that Mr. Knoll, the named plaintiff, was a store manager. So at that point, we believe there were 27 putative class members. The case proceeded for the next several months. There was a motion to compel where the other side said we're talking about profit center manager store. In Mr. Knoll's deposition, he said that a salaried station employee means a profit center manager store like him. And in their case management statement in June, the plaintiff said that the defendant, quote, misclassified all salaried store employees. And again, in a protective order in August 3rd, referred to plaintiff alleging that defendant's classification of the profit center manager store position as exempt, et cetera. So throughout the entire, and then there was a mediation later in December, which was again mediated under the belief that we were talking about 27 putative class members. Ultimately, there was a first amended complaint filed, and in that motion for first amended complaint, plaintiff repeatedly said the reason why they needed to amend that complaint was to clarify the original complaint. A complaint can't be clear as Harris and its progeny requires if you have to clarify it. And they were very, very clear in their motion to amend by referring to the need to clarify the original complaint. The purpose of Harris and this court's rulings in Durham and Carvalho is to avoid specifically this type of situation, where you have a complaint and people are arguing about the meaning. Should you have known? Should you have not known? It has to be clear on the face of the complaint. And the district court never reached that decision. The district court simply said that if you do not file a notice of removal within 30 days, that the only way it can be timely, the notice of removal, is if there is judicial revival. I don't know why the district court engaged in that analysis. It was not argued by either side. So on the timeliness issue, you're talking about a clear, right-line test. Looking at the complaint, it is not. The timeliness doesn't start until you have Federal jurisdiction, does it? Well, the removal clock begins upon receipt of a document that gives the right to remove. That's in the 30 days. And that wasn't in the right to removal wasn't apparent in the document, in the complaint, was it? That's correct. And so we had no obligation to remove, and the 30-day clock did not begin to run. It did not begin to run until we received the first amended complaint, in which they clarified the definition of the class to include all profit center managers at tribal centers locations in California, which was 111 people. And so we removed the case promptly. So you are saying that you weren't on notice because you interpreted salary station employee differently. That was in the first original complaint. Well, that's correct because the term salary station employee was vague. We didn't know what it meant. It's not clear on its face. And then we took action to try to find out what it meant. And the district court never reached that issue, never analyzed the complaint as to whether it was facially clear to remove. Tell me how it changed between the original complaint and the first amended complaint. Were there more people after the first amended complaint that you believed fell within the class? Fewer people? Absolutely more people. The first complaint, salary station employee, and because it was Mr. Knoll was a store manager, was 27 people. Does not fall under CAFA. We could not remove it. It would be risk rule 11 sanctions if we removed it. After the complaint, after the first amended complaint, when they Wouldn't necessarily incur rule 11. That would be a worst case scenario. Right. Probably in all likelihood if there was some argument that your number was wrong, the other side would have brought that out and you would have had a discussion, shall we say. Right. But we did not want to take the risk. And the Durham case specifically says that that's why there's a bright line test. After the first amended complaint, the definition was changed. And as a result, the definition was changed to include specifically all profit center managers at travel center locations in California. That's 111 people because now we're including store managers, we're including a repair shop manager, and we're including restaurant manager, et cetera. That's 111 people. But, counsel, the original complaint defined the class as all California-based salary station employees who worked at any time during the four years preceding the filing of this complaint up until the date of class certification at any station in the state of California owned, operated, and or acquired by defendants. That's correct. You're saying just the use of the term station in that complaint definition led you astray? That's exactly correct, that travel centers does not operate stations. It operates a whole retail location. There is a fuel island, a gas station, if you will, there, but that's not the whole thing that's going on there. But it also described it as salary store positions. Exactly. And Mr. Knoll was a store manager. But he's not a restaurant manager, he's not a shop repair manager, and he's not a quick service restaurant manager. To me, you're splitting hairs. Well, I don't think that we're splitting hairs. I think that we were trying to be precise, and certainly we immediately sought by interrogatories to clarify it. And the clarification that we received from the other side was we're just talking about profit center managers' stores. And had at any time, certainly when the first amended complaint, and certainly if the, there would have been no reason to file a first amended complaint if this was all inclusive, if station had been all inclusive. That was manipulated a little bit, too, in terms of the parties, because according to the record, there was discussion about whether or not the complaint should be amended just to clarify exactly who was included. But I think the plaintiffs would have just as soon kept the complaint the way it was, but was trying to accommodate whatever concerns T.A. had about clarification. Well, I think that T.A.'s position was that we would like to know who was in the class. I mean, that is kind of the foundational issue. You don't have to amend the complaint to do that. We attempted to do that in discovery. Exactly. The first thing that we did is that we served interrogatories exactly to clarify it. And we got no clarification whatsoever. The first clarification was that April letter where they said that we are only talking about store managers, 27 people. If they had said we are talking about every salaried manager that works at a travel center's location in California, it would have been 111 people. Why didn't salaried positions do that for you? They didn't define it as salaried position. They defined it as salaried station managers. Let me ask you, even if we get through that, how do we get to the amount in controversy? How do we meet that amount in controversy requirement? Well, I think that, you know, again, that the district court got this wrong, that what we presented very clear evidence. We showed our work, if you will, in the Rose declarations that are in the record. We showed that the number of work weeks of the 111 people, the amounts that they earned. No dispute over the calculations that you made. My question is, what you did is you took the absolute worst-case scenario. You took an assumption that the lead plaintiff, that that person's damages applied to everybody,  Well, I don't know whether we knew that, and I would just differ. Because you had the records. You're the employer. You know how often these people worked and et cetera. According to the complaint, and I think this is correct, because they were exempt employees, we don't necessarily keep records as to how many hours people are working. They have alleged in their complaint that as one of their allegations that travel centers did not keep records of hours worked. So, again, relying on the complaint, and I think that to make the point that we used the worst-case scenario, we didn't. For example, we used three and a half missed breaks per week. We could have used five. The cases that we cited in our brief are very clear that you can use the worst-case scenario for amount in controversy. You just have to have some basis for that. And when they alleged in their complaint that the plaintiffs, all of the class members, they alleged in their complaint, all of the class members worked far in excess of 40 hours a week and eight hours a day. But you had information in your own records, excerpts of record 100 to 107, that showed the wide variety of salaries and time worked. No, it showed the amount of weeks worked. It did not show the number of hours worked. And so what we did was, when we did our math, is that we used the number of weeks worked, used the actual salaries, and then used the plaintiff's testimony, which we're allowed to use under the authorities, at 10 hours a day, I'm sorry, 10 hours of overtime a week and three and a half missed meal periods. Again, we're talking about amount in controversy. We're talking about the worst-case scenario. The formula was based on the fact that no work between 60 or 70 hours a week, 20 to 30 overtime hours each week, and his salary. No, that's not correct. We used 10 hours of overtime a week. That's what Paragraph 6 of the declaration says. At ER 226. Right. It says, Paragraph 6, Line 23 says, Second, 10 hours of overtime per week reflects a reasonable estimate of a violation rate, particularly in light of the fact that Paul Knoll testified that he typically worked between 60 or 70 hours a week. We used less than what Mr. Knoll said. That's what this says. He testified 20 to 30 hours. We said, you know what, maybe he did. We only used 10. We were conservative. So I don't think that we could have used 20 to 30, but we didn't. We were conservative. So is it your representation that TA did not have access to the actual figures for the class members? Well, I'm not sure what you mean by the actual figures. There are no hours. The hours worked. These people were not punching in and out because they were classified as exempt. Now, at the time that this was prepared, there may be documents somewhere, I don't know, that can be calculated hours worked, but at this point we did not have them. If you have the annual salary, the hourly rate, and the weeks worked, you can't calculate on a weekly basis how many hours they worked? Well, we did. We calculated the hours worked based upon 10 hours a week of overtime. All that calculation that you provided is based on their salary, their start date, and their termination date. That's how you calculate the weeks worked. That's how you calculate their regular rate. But how do you account for the fact that there were different hourly rates? How would you be able to calculate the daily rate? If you look at page 106 and 107, if you look at the, let's take page 106 of the record, the annual rate, and then you take the hourly rate that's based upon, in California, you have to base a regular rate on 40 hours a week under the labor code. So you just do the division. If there was a bonus, it was added in, and then you just multiply that by the weeks worked. But you assume 40 hours. Yes. That's how you calculate the regular rate in California because these people were paid on salary. They weren't paid hourly. All right. Thank you, Sarah. I'll see you, Mike. Over your time. Thank you. Good morning, Your Honors, and may it please the Court. Presiding Judge Rawlinson, my name is Mike Rigetti, and I'm the Deputy Counsel for the Respondents Paul Knoll, Stephen McClure, and Mark Sutherland. Your Honors, I'll get right to it. There are really two main points as to why the district court properly remanded this case to state court, and both of those reasons apply directly to the argument submitted by my opposing colleague, Mr. Shalkoff, in his oral argument. The first reason is that despite his argument, the lower court did, in fact, look at the four corners of the original complaint and decide that the terminology used in that complaint was not vague at all. It was entirely clear to the court. So why did you amend the complaint? Your Honor, that's a very good question, and the reason that we amended the complaint. Give me a good answer. Okay, I will, Your Honor. During the discovery process, we were getting very ambiguous responses as well from the defendant that they did not understand the term salaried station employee. Which was not a term of art, apparently, in this industry. In that industry, Your Honor, it may or may not have been. But I would submit that just because attorneys walk into a room or a judge puts a robe on, we don't have to dispel all notions of common sense when we're dealing with these issues. If either one of your owners walks across the highway in the travel centers and asks a passerby that you're lost and you can't find a gas station, they're going to look at you like you're crazy. And that is because, I mean, to any common decent person, this is a gas station. How about indecent people? You know, Judge Rawlinson, I think you had a nice expression to define what was really going on here, and you used the term splitting hairs. And in order to alleviate any further argument about who is, in fact, included, we found out through the discovery process that there is a specific term of art that is used by travel centers at their locations, and that specific term of art is a profit center manager. Now, as Mr. Shalkoff explained, there's a profit center manager of the store, profit center manager of a fuel station, a restaurant, a shop. We clarified the complaint, Your Honor, and all we did was clarify it. We did not alter the scope of the complaint, and that is something the judge specifically went into. Well, they say you did. It went from 27 to 111. Well, Your Honor, and respectfully, Your Honor, this has been before two courts now before this one. It was before the San Bernardino Superior Court, and it was before the district court. So what? They're both right and we're going to be wrong? Where are you going? Respectfully not, Your Honor. All I'm trying to present to you is that the only person, the only entity in this case that needs clarification or that has needed clarification in the past about what is meant by a station is the defendant, is the defendant's attorneys. And I submit again, and this is an argument I presented to the Superior Court, Your Honor, if you walk across the street, there's a travel center right in San Bernardino. I'm sorry. It's not in San Bernardino. Where were we? In Riverside. So if you walk across the street, are you going to really tell me that that's not a station, that that's not a gas station? So when we pled this, we pled it as all salaried station employees going by the common descent, as we would say, person's nomenclature, that a gas station is, in fact, a station. So, Your Honor, Your Honors, I would directly point the Court to the, to the, to Judge Wen's order in the district court where she actually, you know, discusses this. She discussed the four corners of the original complaint. And in her order at page 5, she specifically says that plaintiffs claim that the original complaint gave defendants sufficient notice of removability under CAFA. Defendant argues that the removal is timely because the original complaint was hopelessly vague. But the Court dispels of that argument later on in its order. So that issue was precisely before the Court. And it seems that the defendant, the appellant in this case, simply disagrees with both the Superior Court and the lower court. And for that reason, appellant thinks that the Court never addressed the issue. Well, that's not really a valid reason for presenting to this Court that the district court never addressed the issue. Just because the Court disagrees with you doesn't mean it never addressed it. Was Mr. Knoll a salaried station employee or a salaried store employee? That's a really good question, Your Honor. I'm two for two with you. Go ahead. Your Honor, in the original complaint, it was pled as a salaried station employee. No, my question was Mr. Knoll's specific title is profit center manager store because there are This is what you used in the amended complaint. Correct. Going back to my question, which was he of the first two, if either or neither? Well, I would say he's both because these are stores and stations. Your Honors, I mean, if there are other questions regarding the timeliness argument, I'd be happy to present them or to answer them. But I would also like to discuss the amount in controversy issue because I think that there's a very clear basis upon which this Court can affirm the district court's order that the defendant did not meet its burden of showing that the amount in controversy exceeds $5 million. Are you willing to stipulate you're not seeking more than $5 million?  Your Honor, there's a lot of case law. I would not stipulate to that. And there's a lot of case law that says that a plaintiff is the master of his or her own pleading. So we can plead our allegations as we choose. And, you know, those are ramifications that we have to deal with at a later time. Okay. So I decline your invitation. But TA put forth evidence to establish that the amount in controversy is $5 million. So why isn't it $5 million? Why isn't that sufficient to confer jurisdiction? Your Honor, I think the question is what does Your Honor mean by evidence? And the case law is very clear that in order to present evidence in support of a notice of removal, it has to be summary judgment type evidence. And summary judgment type evidence is evidence that is admissible at trial. If you look at the declaration of Ms. Rose, it is replete with speculation and assumptions, as Judge Zahari suggested, about how every single class member worked the same amount of hours worked and had the same meal and rest break violations. Well, they had to go with what they had. And you heard them explain that they did the best with the information they had. Since these were exempt employees, they didn't have their actual hours. They didn't take the worst case scenario. They took not 20 or 30 hours, but 10 hours and multiplied it out. What's wrong with that? That's admissible? An attested declaration under oath with those facts? Well, Your Honor, with that declaration, we would certainly object to it, and we presented this argument to the district court that it is based on speculation and assumptions. Then tell me what you would have wanted them to do. Okay, Your Honor, I absolutely will. What else should they have done? Absolutely will. Because I tell you, in these types of cases, when a defendant removes one out of state court, they never want to present any actual evidence of what the amount in controversy is. And why would they? Because later on, when we try and present the issue of damages to a court, we're going to be able to rely on what they submitted. It's a pleading, and we can rely on it. Now, the records that they actually do have and the records that they will rely on later to show that these folks did not work the hours they're saying that they worked are a couple examples. Usually you get, for example, the turning on and off of alarms would suggest when a manager arrives at a store. The store hours can be indicative of how many hours a store manager works. In addition, Your Honors, they have the actual witnesses there working for them. And I tell you, this defendant has obtained declarations from class members in this case up to this point in the litigation. Why didn't we see a declaration from a class member about how many hours they worked? Why didn't we see? Well, Mr. Noland, he's the lead plaintiff, and so they used his information to extrapolate. So why isn't that good enough? Your Honor, it's a very good question again, Judge Rawlinson. And that is a good question. The answer to that is interesting because when you plead this as a class action, you plead that the claims of the class representative are typical of all of the class members. But we would never plead, and it is incredibly ludicrous to assume that damages for each individual class member is identical. The typicality, Your Honor, stems from the misclassification of all of the employees as exempt. And I'll stand before you and tell you that I sincerely believe each and every one of these store managers, station managers, however we want to talk about them here today, is misclassified as an exempt employee. And in that regard, Mr. Noland's claims are typical. Let me see if I understand your answer to my earlier question. Instead of doing what the declaration did, you would have had the defendants take declarations from I don't know how many of these employees and ask them how many hours have you worked over the past months, years, or whatever the timeframe is. Did you work a 40-hour week? Did you work less? Did you work more? You would have had them then go to each employee to get that information. Is that what you're telling me? Your Honor, I would not expect that the defendant receive a declaration setting forth hours worked for each and every class member. Because the burden of what you do want them to do other than check the alarm turning on and off. I want them to present evidence that is not set forth by an economics expert that includes assumptions on hours worked. I mean, if the defendant doesn't have specific records regarding hours worked. What would you have them do? Your Honor, that is when I would look to things such as store hours. I would look to witness testimony. I would look to other actual evidence that the defendant will certainly rely on later in the case to suggest that these folks did not work the hours that they say they worked. Because the defendant is interested in inflating the damages at this point of the case. And then they're interested later in minimizing them. And that's fine. And that's the way these cases are litigated. But they will come in with evidence later to suggest that these folks didn't work the hours they're saying they worked. And it's different in every case what evidence they use to do that. But there is evidence. And they don't have to use an economics expert to extrapolate ten hours of overtime per week for every single class member in order to reach that conclusion. I mean, why would an economics expert who doesn't even work at TA have more knowledge about the hours and the meal and rest breaks than the actual class members or the supervisors or the corporate officers? Because if they didn't produce an expert, you'd probably argue that that wasn't good enough, that they talked to their own employees and they really needed expert testimony to assess. Respectfully, Your Honor, absolutely not. I would never think that to do a simple mathematical calculation, I could have done the math, as Judge Rawlinson discussed the actual formula. The formula is simple. The formula is basic, is multiplication and division. There's no reason that you need an economics expert to come in and testify to these things. Really, the person with the most knowledge is probably the supervisors of these class members. And I would expect perhaps to see declarations from them as they are higher up as corporate officers of the company. Do you think supervisors know how many hours each of their assigned employees work in a given week or month? Well, Your Honor, I would present to you that the defendant usually designates those individuals as the corporate representatives to testify as the person most knowledgeable on that specific issue. So perhaps they don't know any better than the actual employee themselves. Is the supervisor even on site at all these different, you know, stations, if you will call them? Your Honor, they used to be for part of the class period. And then, you know, Mr. Shalkoff can explain that to you as well. But during the class period, travel centers reorganized a little bit to delete, or I don't know if delete is the right word, but to eliminate the site general manager that supervised each individual department manager. And we have deposed that individual. Her name was Vicky Karkut. And she would have been a very good person to testify about hours worked for these individuals. Your Honor, there's another point. I know I have two minutes remaining. You don't have to use it if you don't want to. No, I know. But there is one point I need to make about the U Mountain controversy. And it relates specifically to the cases cited by the defendant appellant about extrapolation based on a 100 percent violation rate. And I know Mr. Shalkoff addressed that in his argument. I would implore the Court to look at those cases that he cites in his reply brief. And the cases I'm referring to is the Korn v. Polo Ralph Lauren case, 536 F sub 2nd, 1199, as well as the Coleman v. Estes Express Lines case. Both of those cases use a 100 percent extrapolation rate to all putative class members. And, Your Honors, I am not going to sit here and tell you that extrapolating to all the class members is improper. I think that all of these class members have suffered damages. But those cases specifically dealt with penalties, statutory penalties, where there isn't any wiggle room about what the damages are. There's a specific statutory penalty of either $100 or $1,000 or, you know, whatever it was in the specific case. And it is appropriate, as the Court said in those circumstances, to extrapolate because there is only one number that each class member is going to be entitled to if the plaintiff proves his or her case. And it is the statutory penalty. In this case, it's very different than those cases because the defendant extrapolated the same amount of actual hours worked and meal and rest breaks suffered by each class member with no foundation whatsoever. No, that's not fair. He took a lead plaintiff and he took a conservative in their view. Okay. And so I'll retract my statement that it was whatsoever. But I do believe that there was better evidence out there, and I will stand before you and state that the evidence submitted was not summary judgment type evidence. It is ranked with assumptions and speculations, and the Ninth Circuit absolutely says that you cannot rely on speculations and conjecture to meet your burden, even if it's a preponderance of the evidence standard. Thank you. All right. Thank you, counsel. I'll give you one minute for rebuttal, Mr. Shokoff. Your mark is set. Go. Thank you. With regard to the amount in controversy, the type of evidence that counsel has indicated that we needed to produce refers to the kind of evidence that we would need to have produced if this was the legal certainty standard. In fact, his confusion is clear because in his brief at page 20, he cites Loudermilk, which is a legal certainty case. It is not a preponderance of the evidence standard. Legal certainty applies if he had today or at any time said this was less than 5 million, which he could have done in his complaint or his first amended complaint. So the type of evidence that we submitted is clearly the kind of evidence that is appropriate for the preponderance of the evidence standard. With regard to what the district court did, the district court, the district court on page 5 of its decision, when it said what both parties said what the original complaint said, it then leaked to judicial revival, and it said specifically that on page 5 at line 25, the court finds that neither of these circumstances referring to the two prongs that need to be shown for judicial revival is present here. And then it later along says, reading at page 6, line 9, reading the original complaint as a whole, the court finds the change in the first amended complaint is not sufficient to render this a substantially new suit. It never analyzed the four corners of the original complaint. Okay, but we're doing a de novo, so. Well, exactly. We're not giving any deference to the district court. So we're just looking at bottom line. Did the district court err? So the analysis that the district court engaged in doesn't really entertain us long. Okay. I understand that. I appreciate that. And just to take your last comment, I think that the district court did err in both respects in its analysis of the original complaint and its analysis of the amount in controversy. This case should be in federal court under the Class Action Fairness Act and would ask the court to reverse the decision of district court. All right. Thank you. Thank you to both counsel for your argument. That concludes our calendar for today. We will be in recess until 9 a.m. tomorrow morning.
judges: Zouhary, Goodwin, Rawlinson